**<u>EXHIBIT A</u>**
(Complaint)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| SEVERKO HRYWNAK, UNITED STATES | ) | |
| OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT FOR FORECLOSURE
## OF COMMERCIAL MORTGAGE AND RELATED RELIEF

Plaintiff FirstMerit Bank, N.A., as assignee of the FDIC, receiver for Midwest Bank and Trust Company ("FirstMerit") by and through its attorneys, Pedersen & Houpt, and pursuant to 735 ILCS 5/15-1101, *et seq.*, alleges as follows:

### PARTIES

1.      Plaintiff FirstMerit is a citizen of the State of Ohio.   FirstMerit is a national association chartered under the laws of the State of Ohio, and maintains its principal place of business and headquarters in Akron, Ohio.

2.      Defendant Severko Hrywnak ("Hrywnak") is a citizen of the State of Illinois. Hrywnak maintains his principal residence in Chicago, Illinois.

### JURISDICTION AND VENUE

3.      Jurisdiction in this Court is based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332, as there is complete diversity amongst the parties and the matters in controversy, exclusive of interest and costs, exceed the sum of $75,000.00.

4.     Venue is proper in this District, pursuant to 18 U.S.C. § 1391, because the mortgage at issue is secured by property located in this District and a substantial portion of the acts and omissions giving rise to the claims occurred here.

## INTRODUCTION

5.     FirstMerit files this action to, among other related relief, foreclose on a commercial mortgage related to a loan for real property located at 4958 West Irving Park Road in Cook County, IL.

## BACKGROUND

6.     On December 7, 1999, Hrywnak on the one hand, and Mount Prospect National Bank ("Mount Prospect Bank") on the other hand, entered into a mortgage against the real property commonly known as 4958 West Irving Park Road, Chicago, IL, and more fully described below ("4958 West Irving Park Road").  Such mortgage was modified from time to time, with the latest modification being on September 23, 2008 (as modified, the "Mortgage").  A copy of the Mortgage is attached hereto as Exhibit A.

7.     The Mortgage secures the indebtedness under that certain promissory note originally dated July 31, 2003 by and between Severko Hrywnak on the one hand and Midwest Bank and Trust Company ("Midwest Bank and Trust") on the other hand, in the original principal amount of $338,419.77. Such note was replaced from time to time, with the latest replacement note being dated September 23, 2008 in the principal amount of $444,372.36 (as amended, the "Note").  A copy of the Note, as amended, is attached hereto as Exhibit B.

8.     On December 7, 1999, Hrywnak on the one hand, and Mount Prospect Bank on the other hand, entered into an Assignment of Rents, for rents from 4958 Irving Park Road (the "AOR").  A copy of the AOR is attached hereto as Exhibit C.

00756133v4                                        2

9.     As of October 1, 2007, Mount Prospect Bank was acquired by Midwest Bank and Trust. FirstMerit succeeded to Midwest Bank and Trust's rights under the Mortgage, the Note, the AOR, and all related loan agreements described herein pursuant to a purchase and assumption agreement dated May 14, 2010 among FirstMerit, the FDIC as receiver of Midwest Bank and Trust and the FDIC.

10.     The Mortgage was assigned to FirstMerit pursuant to an Assignment of Mortgage, attached hereto as Exhibit D. Such Assignment of Mortgage was recorded with the Cook County Recorder of Deeds on May 19, 2011 as Document No. 1113939069.

11.     Defendant United States of America has recorded three federal income tax liens:

a. Notice of Federal Tax Lien recorded by Revenue Officer A.E. Gentry (Department of Treasury - Internal Revenue Service, Small Business/Self Employed Area #4) on July 6, 2012 with the Cook County Recorder of Deeds as Doc. No. 1218826128, relating to taxpayers Severko & Renee Hrywnak (Identifying Number XXX-XX-1735) for the tax period ending 12/31/2006 in the amount of $254,279.88 ("Federal Tax Lien Notice 1"). The taxpayers address in Federal Tax Lien Notice 1 is identified as 4106 N. Lavergne Ave., Chicago, IL 60641-1713. A copy of Federal Tax Lien Notice 1 is attached hereto as Exhibit E.

b. Notice of Federal Tax Lien recorded by Revenue Officer A.E. Gentry (Department of Treasury - Internal Revenue Service, Small Business/Self Employed Area #4) on February 22, 2013 with the Cook County Recorder of Deeds as Doc. No. 1305326169, relating to taxpayers Severko & Renee Hrywnak (Identifying Number XXX-XX-1735) for the tax periods ending 12/31/2007, 12/31/2008 and 12/31/2010 in the total amount of $630,651.45 ("Federal Tax Lien Notice 2"). The taxpayers address in Federal Tax Lien Notice 2 is identified as 4106 N. Lavergne Ave., Chicago, IL 60641-1713. A copy of Federal Tax Lien Notice 2 is attached hereto as Exhibit F.

c. Notice of Federal Tax Lien recorded by Revenue Officer A.E. Gentry (Department of Treasury - Internal Revenue Service, Small Business/Self Employed Area #4) on May 7, 2014 with the Cook County Recorder of Deeds as Doc. No. 1412742130, relating to taxpayers Severko & Renee Hrywnak (Identifying Number XXX-XX-1735) for the tax period ending 12/31/2009 in the amount of $98,525.47 ("Federal Tax Lien Notice 3"). The taxpayers address in Federal Tax Lien Notice 3 is identified as 4106 N. Lavergne Ave., Chicago, IL 60641-1713. A copy of Federal Tax Lien Notice 3 is attached

hereto as Exhibit G.

## COUNT I
### (Breach of Contract – Note)

12.     FirstMerit incorporates by reference the preceding paragraphs of this Complaint as if fully stated herein.

13.     Despite demand, Hrywnak has failed and refused to pay the amounts due and owing under the Note.

14.     The Note is valid and binding upon all parties.

15.     FirstMerit has fulfilled all of its obligations under the Note by, among other things, loaning Hrywnak the amounts therein.

16.     Notice of default and demand for repayment has been duly and properly given and any and all grace and/or cure periods have expired.

17.     Hrywnak has breached his obligations under the Note by his failure to pay the amounts due and owing to FirstMerit under the Note including principal and interest upon maturity of the Note.

18.     Page 2 of the Note provides that FirstMerit is entitled to attorneys' fees and costs expended for collection of the Note.

19.     As of February 5, 2015, there was due and owing to FirstMerit the principal balance of $291,426.34, in addition to $9,889.72 of accrued interest, $15,323.73 of late charges, $11,210.52 in real estate taxes, $1,005.51 in attorneys' fees and costs, and $6,820.00 in other charges and fees (subtotal of $335,675.82), in addition to other charges accrued and unpaid thereunder, accruing interest, late payment fees, attorneys' fees and costs of foreclosure under the Note.

WHEREFORE, Plaintiff FirstMerit requests this Court grant the following relief:

(i)     That this Court enter judgment in its favor and against Severko Hrywnak, in the amount of $335,675.82, together with other charges accrued and unpaid

thereunder, accruing interest, late payment fees, attorneys' fees and costs of foreclosure under the Note; and

(ii)     Such other and further relief as this court deems just and equitable.

## COUNT II
### (Foreclosure of the Mortgage – Against Severko Hrywnak)

20.     FirstMerit incorporates by reference the preceding paragraphs of this Complaint as if fully stated herein.

21.     FirstMerit seeks to foreclose on the Mortgage pursuant to 735 ILCS 5/15-1101 *et seq.*, and joins as defendants the following parties:  Severko Hrywnak and the United States of America.

22.     Information concerning the Mortgage:

(a)     Nature of Instrument:  Mortgage.

(b)     Date of Mortgage:  December 7, 1999.

(c)     Names of Mortgagor:  Severko Hrywnak.

(d)     Name of Mortgagee:  FirstMerit Bank, N.A. (successor in interest to the FDIC as Receiver of Midwest Bank and Trust).

(e)     Date and place of recording of Mortgage:  December 13, 1999, with the Cook County Recorder of Deeds.

(f)     Identification of recording: 09157890.

(g)     Interest subject to the Mortgage:  Fee simple.

(h)     Amount of original indebtedness under the Mortgage: $355,000.00.

(i)     Legal description of the mortgaged premises and the common address or other information sufficient to identify it with reasonable certainty:

i.     Legal description of the mortgaged premises:

LOT 64 IN DICKINSON PARK SUBDIVISION NO. 2, BEING A SUBDIVISION OF THE SOUTH 175 FEET OF THE WEST 830

FEET OF THE EAST 3/4 OF LOT 12 OF THE SCHOOL TRUSTEES' SUBDIVISION OF SECTION 16, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

    ii.    Common address of mortgaged premises: 4598 W. Irving Park Road, Chicago, IL 60641.

    iii.    Permanent Real Estate Index Numbers: 13-16-428-023.

(j)    Statement as to Defaults and Amounts Now due:

    i.    Hrywnak has failed to make payment in full upon maturity of the Note.

    ii.    As of February 5, 2015, there was due and owing to FirstMerit the principal balance of $291,426.34, in addition to $9,889.72 of accrued interest, $15,323.73 of late charges, $11,210.52 in real estate taxes, $1,005.51 in attorneys' fees and costs, and $6,820.00 in other charges and fees (subtotal of $335,675.82), in addition to other charges accrued and unpaid thereunder, accruing interest, late payment fees, attorneys' fees and costs of foreclosure under the Note.

(k)    Name of present owners of the Mortgaged Premises: Severko Hrywnak.

(l)    Name of other persons who are joined as defendants and whose interest in or lien on the Mortgaged Premises is sought to be terminated: United States of America as to Federal Tax Lien Notice 1, Federal Tax Lien Notice 2 and Federal Tax Lien Notice 3.

(m)    Name of Defendants claimed to be personally liable for deficiency, if any: Severko Hrywnak.

(n)    Capacity in which plaintiff brings this foreclosure: FirstMerit is the owner and legal holder of the Note, the Mortgage, and the indebtedness.

(o)    Facts supporting shortening of the redemption period: n/a

(p)    Waiver of redemption: FirstMerit is seeking to have the Mortgagor's right of redemption waived, pursuant to 735 ILCS § 5/15-1601(b) as: 1) the mortgaged premises are not residential real estate and 2) the Mortgage contains an express waiver of the Mortgagor's right of redemption (see page 8-9 of the Mortgage).

(q)    Facts in support of request for attorneys' fees and costs and expenses: Pursuant to page 2 of the Note (under "Attorneys' Fees; Expenses") and page

8 of the Mortgage (under "Attorneys' Fees; Expenses"), Hrywnak agreed that there should be allowed and included as additional indebtedness secured by the Mortgage, all costs and expenses, including reasonable attorneys' fees, which may be incurred or expended by or on behalf of FirstMerit in prosecuting this foreclosure.

(r)     Facts in support of a request for appointment of receiver:  Pursuant to page 7 of the Mortgage (under "Mortgagee in Possession") and 735 ILCS 5/15-1702, FirstMerit is entitled to have a receiver appointed.

(s)     Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought:  n/a

(t)     Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof:

    i.      Severko Hrywnak, as owner of the Mortgaged Premises.

    ii.     United States of America as junior lien holder.  The United States of America's liens pursuant to Federal Tax Lien Notice 1, Federal Tax Lien Notice 2 and Federal Tax Lien Notice 3 are all inferior to FirstMerit's lien pursuant to the Mortgage as each of Federal Tax Lien Notice 1, Federal Tax Lien Notice 2 and Federal Tax Lien Notice 3 was recorded after the Mortgage.

WHEREFORE, Plaintiff FirstMerit requests this Court to grant the following relief:

(i)     A judgment of foreclosure and sale;

(ii)    An order granting possession;

(iii)   An order waiving the Mortgagor's right of redemption;

(iv)    A judgment for attorneys' fees, costs and expenses; and

(v)     Any such relief as this Court deems just and equitable.

## COUNT III
### (Foreclosure of Rents)

18.     FirstMerit incorporates by reference the preceding paragraphs of this Complaint as if fully stated herein.

19.     Pursuant to the aforementioned AOR, Hrywnak granted FirstMerit a security interest in all of their right, title and interest in and to the rents from 4958 Irving Park (the "Rents"). Such security interest secured all indebtedness of Hrywnak to FirstMerit, including any indebtedness under the Note.

20.     Mount Prospect Bank duly perfected its security interest by filing the AOR with the Cook County Recorder of Deeds on December 13, 1999 as Document No. 09157891.

21.     FirstMerit recorded an assignment of the AOR with the Cook County Recorder of Deeds on May 19, 2011 as Document No. 1113939070. A copy of the assignment of the AOR is attached hereto as Exhibit H.

22.     FirstMerit, as a secured party under the Illinois Commercial Code, seeks to foreclose its security interest as granted in the AOR against the Rents, pursuant to Article 9 of the Illinois Commercial Code, 805 ILCS 5/9-601 et seq.

23.     Upon information and belief, at the time of the filing of this Complaint, Hrywnak is the present owner and is in possession of the Rents.

24.     The AOR constitutes a valid lien upon Hrywnak's interest in the Rents.

25.     Notice of default and demand for repayment has been duly and properly given and any and all grace and/or cure periods have expired.

26.     Despite demand, Hrywnak has failed to pay the amounts due and payable under the Note.

27.     As of February 5, 2015, there was due and owing to FirstMerit the principal balance of $291,426.34, in addition to $9,889.72 of accrued interest, $15,323.73 of late charges, $11,210.52 in real estate taxes, $1,005.51 in attorneys' fees and costs, and $6,820.00 in other charges and fees,

(subtotal of $335,675.82), in addition to other charges accrued and unpaid thereunder, accruing interest, late payment fees, attorneys' fees and costs of foreclosure under the Note.

28.     The Note has matured, so the entire amount due under the Note has become due.

29.     Pursuant to the AOR, FirstMerit is entitled to take possession of all Rents and to exclude Hrywnak therefrom.

WHEREFORE, FirstMerit respectfully requests that this Court grant it:

(i)     a judgment of foreclosure of the Rents;

(ii)    an order granting FirstMerit immediate possession of the Rents; and

(iii)   such other and further relief as this Court deems just and appropriate.

Dated: February 10, 2015                    FIRSTMERIT BANK, N.A.


                                    By:     /s/   Bryan E. Minier
                                            One of its Attorneys

Bryan E. Minier (ARDC# 6275534)
Pedersen & Houpt, P.C.
161 N. Clark Street, Suite 2700
Chicago, Illinois 60601
Phone: (312) 261-2265
Fax:    (312) 261-1265

## VERIFICATION

The undersigned, being first duly sworn upon oath, deposes and states that he is a Vice President of FirstMerit Bank, N.A., the Plaintiff in this action, that he is authorized to execute this Verification on behalf of FirstMerit Bank, N.A., that he has read the Verified Complaint for Foreclosure of Commercial Mortgages and Related Relief, that he has personal knowledge of the facts stated therein, and that the facts stated therein are true and correct.

Jason Schachter, Vice President
FirstMerit Bank, N.A.

Subscribed and sworn to before me
This 9th day of February, 2015

Notary Public

OFFICIAL SEAL
JANET GALLICHIO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 02/05/2017



2616/0099 85 005 Page 1 of    9
**1999-12-13  12:15:54**
Cook County Recorder          37.50

09157890

RECORDATION REQUESTED BY:
MOUNT    PROSPECT    NATIONAL
BANK
50 NORTH MAIN STREET
MOUNT PROSPECT, IL  60056

WHEN RECORDED MAIL TO:
MOUNT    PROSPECT    NATIONAL
BANK
50 NORTH MAIN STREET
MOUNT PROSPECT, IL  60056

SEND TAX NOTICES TO:
MOUNT    PROSPECT    NATIONAL
BANK
50 NORTH MAIN STREET
MOUNT PROSPECT, IL  60056

6700570  JO

**COOK COUNTY
RECORDER
EUGENE "GENE" MOORE
ROLLING MEADOWS**        **FOR RECORDER'S USE ONLY**

This Mortgage prepared by:  MOUNT PROSPECT NATIONAL BANK
50 N. MAIN STREET
MOUNT PROSPECT, IL 60056

## MORTGAGE

**THIS MORTGAGE IS DATED DECEMBER 7, 1999, between Severko Hrywnak, whose address is 4958 W. Irving Park Road, Chicago, IL  60641 (referred to below as "Grantor"); and MOUNT PROSPECT NATIONAL BANK, whose address is 50 NORTH MAIN STREET, MOUNT PROSPECT, IL  60056 (referred to below as "Lender").**

**GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages, warrants, and conveys to Lender** all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **located in Cook County, State of Illinois (the "Real Property"):**

**LOT 64 IN DICKINSON PARK SUBDIVISION, NO. 2, BEING A SUBDIVISION OF THE SOUTH 175 FEET OF THE WEST 830 FEET OF THE EAST 3/4 OF LOT 12 IN SCHOOL TRUSTEES' SUBDIVISION, OF SECTION 16, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

**The Real Property or its address is commonly known as 4958 W. Irving Park Road, Chicago, IL  60641.** The Real Property tax identification number is 13-16-428-023.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Grantor.** The word "Grantor" means **Severko Hrywnak.** The Grantor is the mortgagor under this Mortgage.

**Guarantor.** The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Improvements.** The word "Improvements" means and includes without limitation all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Note and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. In addition to the Note, the word "Indebtedness" includes all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor, or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, absolute or contingent, liquidated or unliquidated and whether Grantor may be liable individually or jointly with others, whether obligated as guarantor or otherwise, and whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations, and whether such Indebtedness may be or hereafter may become otherwise unenforceable. **At no time shall the principal amount of Indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $700,000.00.**

**Lender.** The word "Lender" means MOUNT PROSPECT NATIONAL BANK, its successors and assigns. The Lender is the mortgagee under this Mortgage.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Personal Property and Rents.

**Note.** The word "Note" means the promissory note or credit agreement dated December 7, 1999, **in the original principal amount of $355,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is 8.500%.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE   (1) PAYMENT OF THE INDEBTEDNESS AND   (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE AND THE RELATED DOCUMENTS.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due, and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until in default or until Lender exercises its right to collect Rents as provided for in the Assignment of Rents form executed by Grantor in connection with the Property, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Mortgage, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No.

# MORTGAGE
## (Continued)

99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Grantor represents and warrants to Lender that: (a) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, about or from the Property; (b) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance on, under, about or from the Property by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (c) Except as previously disclosed to and acknowledged by Lender in writing, (i) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, about or from the Property and (ii) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for hazardous waste and hazardous substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the properties. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without the prior written consent of Lender. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Mortgage.

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property,

12-07-1999
Loan No 9001

Case: 1:15-cv-01262 Document #: 1-1 Filed: 02/10/15 Page 7 of 18 PageID #:14

09157890

**MORTGAGE**
**(Continued)**

Page 4

and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due, and except as otherwise provided in the following paragraph.

**Right To Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured, the then current replacement value of such property, and the manner of determining that value; and (e) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Grantor agrees to establish a reserve account to be retained from the loans proceeds in such amount deemed to be sufficient by Lender and shall pay monthly into that reserve account an amount equivalent to 1/12 of the annual real estate taxes and insurance premiums, as estimated by Lender, so as to provide sufficient funds for the payment of each year's taxes and insurance premiums one month prior to the date the taxes and insurance premiums become delinquent. Grantor shall further pay a monthly pro-rata share of all assessments and other charges which may accrue against the Property. If the amount so estimated and paid shall prove to be insufficient to pay such taxes, insurance premiums, assessments and other charges, Grantor

# MORTGAGE
## (Continued)

shall pay the difference on demand of Lender. All such payments shall be carried in an interest-free reserve account with Lender, provided that if this Mortgage is executed in connection with the granting of a mortgage on a single-family owner-occupied residential property, Grantor, in lieu of establishing such reserve account, may pledge an interest-bearing savings account with Lender to secure the payment of estimated taxes, insurance premiums, assessments, and other charges. Lender shall have the right to draw upon the reserve (or pledge) account to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Mortgage shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the amount so estimated and paid shall prove to be insufficient to pay such taxes, insurance premiums, assessments and other charges, Grantor shall pay the difference as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an event of default as described below.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Mortgage, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage.

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities, including without limitation all applicable environmental laws, ordinances, and regulations, unless otherwise specifically excepted in the environmental agreement executed by Grantor and Lender relating to the Property.

**CONDEMNATION.** The following provisions relating to condemnation of the Property are a part of this Mortgage.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments as may be requested by it from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (a) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (b) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (c) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (d) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Case: 1:15-cv-01262 Document #: 1-1 Filed: 02/10/15 Page 6 of 53 PageID #:16

**12-07-1999**
**Loan No 9001**

**MORTGAGE**
**(Continued)**

Page 6

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default (as defined below), and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (a) pays the tax before it becomes delinquent, or (b) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage.

**Security Agreement.** This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Grantor under the Note, this Mortgage, and the Related Documents, and (b) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or agreed to the contrary by Lender in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time. If, however, payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (a) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (b) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (c) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Mortgage:

**Default on Indebtedness.** Failure of Grantor to make any payment when due on the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Compliance Default.** Failure of Grantor to comply with any other term, obligation, covenant or condition contained in this Mortgage, the Note or in any of the Related Documents.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security

**MORTGAGE**
**(Continued)**

Page 7

agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Note or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Grantor under this Mortgage, the Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor or the dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forefeiture proceeding, provided that Grantor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender reasonably deems itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**09157890**

Case: 1:15-cv-01262 Document #: 1-1 Filed: 02/10/15 Page 8 of 13 PageID #:18

Page 8 of 9

Page 8

**12-07-1999**      **MORTGAGE**

**Loan No 9001**      **(Continued)**

---

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of any Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or take action to perform an obligation of Grantor under this Mortgage after failure of Grantor to perform shall not affect Lender's right to declare a default and exercise its remedies under this Mortgage.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the rate provided for in the Note. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES TO GRANTOR AND OTHER PARTIES.** Any notice under this Mortgage, including without limitation any notice of default and any notice of sale to Grantor, shall be in writing, may be sent by telefacsimile (unless otherwise required by law), and shall be effective when actually delivered, or when deposited with a nationally recognized overnight courier, or, if mailed, shall be deemed effective when deposited in the United States mail first class, certified or registered mail, postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Applicable Law. This Mortgage has been delivered to Lender and accepted by Lender in the State of Illinois. This Mortgage shall be governed by and construed in accordance with the laws of the State of Illinois.**

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Mortgage in all other respects shall remain valid and enforceable.

**Successors and Assigns.** Subject to the limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time Is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY

12-07-1999
Loan No 9001

## MORTGAGE
### (Continued)

CONTAINED IN THIS MORTGAGE, GRANTOR HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER 735 ILCS 5/15-1601(b), AS NOW ENACTED OR AS MODIFIED, AMENDED OR REPLACED, OR ANY SIMILAR LAW EXISTING NOW OR AFTER THE DATE OF THIS MORTGAGE, ANY AND ALL RIGHTS OF REDEMPTION ON BEHALF OF GRANTOR AND ON BEHALF OF ANY OTHER PERSONS PERMITTED TO REDEEM THE PROPERTY.

**Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Mortgage (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or any of Grantor's obligations as to any future transactions. Whenever consent by Lender is required in this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
Severko Hrywnak

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___ILLINOIS___ )
) ss
COUNTY OF ___COOK___ )

OFFICIAL SEAL
JEANETTE R PILAPIL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/29/01

On this day before me, the undersigned Notary Public, personally appeared **Severko Hrywnak**, to me known to be the individual described in and who executed the Mortgage, and acknowledged that he or she signed the Mortgage as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___7th___ day of ___December___, 19_98_.

By ___Jeanette R. Pilapil___  Residing at ___Mount Prospect___

Notary Public in and for the State of ___ILLINOIS___

My commission expires ___01/29/01___

---

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.27a (c) 1999 CFI ProServices, Inc.  All rights reserved.
[IL-G03 E3.27 F3.27 P3.27 HRYWNAK.LN C1.OVL]

**RECORDATION REQUESTED BY:**
    Mount Prospect National
    Bank
    50 North Main Street
    Mount Prospect, IL 60056

**WHEN RECORDED MAIL TO:**
    Mount Prospect National
    Bank
    50 North Main Street
    Mount Prospect, IL 60056

**SEND TAX NOTICES TO:**
    Mount Prospect National
    Bank
    50 North Main Street
    Mount Prospect, IL 60056

Doc#: 0326249013
Eugene "Gene" Moore Fee: $30.00
Cook County Recorder of Deeds
Date: 09/19/2003 07:44 AM Pg: 1 of 4

**FOR RECORDER'S USE ONLY**

This Modification of Mortgage prepared by:

    Andrew A. Hommowun, Vice President
    Mount Prospect National Bank
    50 North Main Street
    Mount Prospect, IL 60056

## MODIFICATION OF MORTGAGE

THIS MODIFICATION OF MORTGAGE dated July 31, 2003, is made and executed between Severko Hrywnak (referred to below as "Grantor") and Mount Prospect National Bank, whose address is 50 North Main Street, Mount Prospect, IL 60056 (referred to below as "Lender").

**MORTGAGE.** Lender and Grantor have entered into a Mortgage dated December 7, 1999 (the "Mortgage") which has been recorded in Cook County, State of Illinois, as follows:

**recorded 12/13/99 as document #09157890 in Cook County, Illinois.**

**REAL PROPERTY DESCRIPTION.** The Mortgage covers the following described real property located in Cook County, State of Illinois:

    LOT 64 IN DICKINSON Park SUBDIVISION, NO. 2, BEING A SUBDIVISION OF THE SOUTH 175 FEET OF THE WEST 830 FEET OF THE EAST 3/4 OF LOT 12 IN SCHOOL TRUSTEES' SUBDIVISION, OF SECTION 16, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 4958 W. Irving Park Road, Chicago, IL 60641. The Real Property tax identification number is 13-16-428-023

**MODIFICATION.** Lender and Grantor hereby modify the Mortgage as follows:

**I) Decrease rate of original mortgage from 8.50% to 6.00%, and extend note maturity date from 12/15/04 to 7/15/08; II) Add a second Promissory Note secured by the Mortgage, the new Promissory Note being dated July 31, 2003 in the original principal amount of $50,000 .**

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict

**RECORDATION REQUESTED BY:**
MIDWEST BANK AND TRUST
COMPANY
Mount Prospect
50 North Main Street
Mount Prospect, IL 60056

**WHEN RECORDED MAIL TO:**
MIDWEST BANK AND TRUST
COMPANY
Mount Prospect
50 North Main Street
Mount Prospect, IL 60056

Doc#: 0827708004 Fee: $40.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 10/03/2008 07:39 AM Pg: 1 of 3

R11948266

**FOR RECORDER'S USE ONLY**

This Modification of Mortgage prepared by:
Thomas/Killinger
MIDWEST BANK AND TRUST COMPANY
50 North Main Street
Mount Prospect, IL 60056



# MODIFICATION OF MORTGAGE

**THIS MODIFICATION OF MORTGAGE** dated **September 23, 2008**, is made and executed between **Severko Hrywnak**, a single person, whose address is 4106 N. Lavergne, Chicago, IL 60641 (referred to below as "Grantor") and **MIDWEST BANK AND TRUST COMPANY** , whose address is 50 North Main Street, Mount Prospect, IL 60056 (referred to below as "Lender").

**MORTGAGE.** Lender and Grantor have entered into a Mortgage dated December 7, 1999 (the "Mortgage") which has been recorded in Cook County, State of Illinois, as follows:

Recorded on December 13, 1999 as Document No. 09157890 in the Recorder's Officer of Cook County, Illinois.

**REAL PROPERTY DESCRIPTION.** The Mortgage covers the following described real property located in Cook County, State of Illinois:

LOT 64 IN DICKINSON PARK SUBDIVISION, NO. 2, BEING A SUBDIVION OF THE SOUTH 175 FEET OF THE WEST 830 FEET OF THE EAST 3 / 4 OF LOT 12 IN SCHOOL TRUSTEES' SUBDIVISION, OF SECTION 16, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 4958 W. Irving Park Road, Chicago, IL 60641. The Real Property tax identification number is 13-16-428-023-0000.

**MODIFICATION.** Lender and Grantor hereby modify the Mortgage as follows:

This Modification of Mortgage reflects that the Mortgage now secures a Promissory Note dated September 23, 2008 in the original principal amount of $444,372.36 executed by Borrower together with all renewals, extensions, modifications or replacements thereof. The maximum lien of the Mortgage is hereby increased to $444,372.36.

## MODIFICATION OF MORTGAGE
### (Continued)

In addition, the following language shall be added to the mortgage and made apart thereof:

CROSS-COLLATERALIZATION. In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

All other terms and provisions not specifically amended herein, remain unchanged and in full effect.

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF MORTGAGE IS DATED SEPTEMBER 23, 2008.

GRANTOR:

X_____
Severko Hrywnak

LENDER:

MIDWEST BANK AND TRUST COMPANY

X_____
Authorized Signer

## MODIFICATION OF MORTGAGE
### (Continued)

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___ILLINOIS___ )
                       ) SS

COUNTY OF ___COOK___ )

On this day before me, the undersigned Notary Public, personally appeared **Severko Hrywnak**, to me known to be the individual described in and who executed the Modification of Mortgage, and acknowledged that he or she signed the Modification as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___26th___ day of ___SEPTEMBER___, 20_08_.

By ___Cathy Yario___       Residing at ___ILLINOIS___

Notary Public in and for the State of ___ILLINOIS___

My commission expires ___02-19-12___

> "OFFICIAL SEAL"
> CATHY YARIO
> Notary Public, State of Illinois
> My Commission Expires 02-19-12

### LENDER ACKNOWLEDGMENT

STATE OF ___ILLINOIS___ )
                       ) SS

COUNTY OF ___COOK___ )

On this ___26th___ day of ___SEPTEMBER___, ___2008___ before me, the undersigned Notary Public, personally appeared ___ANDREW S. KILLINGER___ known to me to be the ___LOAN OFFICER___ _____, authorized agent for **MIDWEST BANK AND TRUST COMPANY** that executed the within and foregoing instrument and acknowledged said instrument to be the free and voluntary act and deed of **MIDWEST BANK AND TRUST COMPANY**, duly authorized by **MIDWEST BANK AND TRUST COMPANY** through its board of directors or otherwise, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this said instrument and in fact executed this said instrument on behalf of **MIDWEST BANK AND TRUST COMPANY**.

By ___Cathy Yario___       Residing at ___ILLINOIS___

Notary Public in and for the State of ___ILLINOIS___

My commission expires ___02-19-12___

> "OFFICIAL SEAL"
> CATHY YARIO
> Notary Public, State of Illinois
> My Commission Expires 02-19-12

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $444,372.36 | 09-23-2008 | 09-23-2013 | | 1E1 / 780 | HAA1655 | 351 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Severko Hrywnak
4106 N. Lavergne
Chicago, IL 60641

**Lender:** MIDWEST BANK AND TRUST COMPANY
Mount Prospect
50 North Main Street
Mount Prospect, IL 60056

**Principal Amount: $444,372.36** **Interest Rate: 6.250%** **Date of Note: September 23, 2008**

PROMISE TO PAY. Severko Hrywnak ("Borrower") promises to pay to MIDWEST BANK AND TRUST COMPANY ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Forty-four Thousand Three Hundred Seventy-two & 36/100 Dollars ($444,372.36), together with interest at the rate of 6.250% per annum on the unpaid principal balance from September 23, 2008, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT. Borrower will pay this loan in 59 regular payments of $3,831.72 each and one irregular last payment estimated at $343,734.68. Borrower's first payment is due October 23, 2008, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 23, 2013, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to Interest, Principal, Escrow, Late Charges and Miscellaneous Fees.. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

PREPAYMENT PENALTY. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: A prepayment fee (in an amount described below) shall be immediately due and payable in the event:(a) that Borrower voluntarily prepays any portion of Note with allowance for 10% of outstanding loan balance to be repaid on a per annum basis; (b) that Borrower involuntarily prepays the Note or Indebtedness evidenced hereby as a result of any exercise or enforcement by Lender of any right or remedy provided for hereunder or otherwise available to Lender, including, without limitation, acceleration (whether in whole or in part) of the Note or Indebtedness, application of insurance proceeds or condemnation awards, or commencement of foreclosure proceedings (or acceptance of a deed in lieu thereof); or(c) of any voluntary or involuntary sale, conveyance, assignment, mortgage, hypothecation, or transfer (including, without limitation, transfer in lieu of foreclosure) of any portion of, or right in or to, the Real Property securing Note or Indebtedness. The Prepayment Fee shall be equal to: 3.00% of the aggregate outstanding amount of the Note or Indebtedness (on the date of the relevant event described in (a), (b) or (c) above) if such event occurs anytime during the first year of the Note or Indebtedness term, 2.00% of the aggregate outstanding amount of the Note or Indebtedness (on the date of the relevant event described in (a), (b) or (c) above) if such event occurs anytime during the second year of the Note or Indebtedness term and 1.00% of the aggregate outstanding amount of the Note or Indebtedness (on the date of the relevant event described in (a), (b) or (c) above) if such event occurs anytime during the third year of the Note or Indebtedness term. The Borrower and Lender agree that the Prepayment Fee is a material term of this transaction and is necessary to prevent Lender from suffering an actual loss by reason of the Borrower(s) prepayment and, but for the Lender having the right to demand and collect the Prepayment Fee, the Lender would not have entered into this transaction. The Borrower(s) and Lender further acknowledge and agree that the foregoing Prepayment Fee is reasonable in as much as that, as of the date hereof, the date of the prepayment and the rate of return available to the Lender as of such date are incapable of estimation, and that such Prepayment Fee has been agreed to by the Borrower(s) and Lender in lieu of such calculation. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: MIDWEST BANK AND TRUST COMPANY , Attention: Loan Operations Department, 501 WEST NORTH AVENUE MELROSE PARK, IL 60160-1603.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.**

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 5.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.

# PROMISSORY NOTE
## (Continued)

This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Mortgage and Assignment of Rents dated December 7, 1999 from Borrower to Lender on real property located in Cook County, State of Illinois as may be subsequently modified, and other such documents, instruments and/or agreements securing this Note as issued from time to time.

**TAX ESCROW.** Borrower and/or Grantor agrees to establish a reserve account in such amounts deemed to be sufficient by Lender and shall pay monthly into the reserve account an amount equivalent to 1 / 12 of the annual real estate taxes, as estimated by Lender, so as to provide sufficient funds for the payment of each year's taxes one month prior to the date the tax premiums become delinquent. Borrower and/or Grantor shall further pay a monthly pro-rata share of all assessments and other charges, which may accrue against the Property. If the amount so estimated and paid shall prove to be insufficient to pay such taxes, grantor shall pay the difference on demand of Lender. All such payments shall be carried in an interest free reserve account with Lender. Lender shall have the right to draw upon the reserve account to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Subject to any limitations set by applicable law, if the amount so estimated and paid shall prove to be insufficient to pay taxes, Borrower and/or Grantor shall pay the difference as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of default as described below. .

**ADDITIONAL TERMS AND CONDITIONS.** See Business Loan Agreement dated September 23, 2008 between Borrower and Lender, as the same may be amended, modified, or restated from time to time.

**PRIOR NOTE.** This Note is a restatement of the indebtedness evidenced by, and is a replacement and consolidation of the $279,619.15 Promissory Note of Borrower dated July 15, 2008 payable to the order of Lender (principal balance of $277,822.00 as of the date hereof) as amended from time to time and as most recently amended by Promissory Note dated September 23, 2008 and nothing contained herein shall be construed: (i) to deem paid or forgiven the unpaid principal amount of, or unpaid accrued interest on, said Promissory Note outstanding at the time of its replacement by this Note; or (ii) to release, cancel, terminate or otherwise adversely affect all or any part of any lien, mortgage, deed of trust, assignment, security interest or other encumbrance heretofore granted or for the benefit of the payee of said Promissory Note which has not otherwise been expressly released.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

# PROMISSORY NOTE
## (Continued)

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

X _____
Severko Hrywnak

LASER PRO Lending, Ver. 5.40.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. IL R:\PROSUITE\CFI\LPL\D20.FC TR-23278 PR-52

**09157891**

2616/0100 85 005 Page 1 of 6
**1999-12-13 12:17:55**
Cook County Recorder 31.50

09157891

**RECORDATION REQUESTED BY:**
MOUNT PROSPECT NATIONAL BANK
50 NORTH MAIN STREET
MOUNT PROSPECT, IL 60056

**WHEN RECORDED MAIL TO:**
MOUNT PROSPECT NATIONAL BANK
50 NORTH MAIN STREET
MOUNT PROSPECT, IL 60056

**SEND TAX NOTICES TO:**
MOUNT PROSPECT NATIONAL BANK
50 NORTH MAIN STREET
MOUNT PROSPECT, IL 60056

COOK COUNTY
RECORDER
EUGENE "GENE" MOORE
ROLLING MEADOWS

**FOR RECORDER'S USE ONLY**

This Assignment of Rents prepared by: MOUNT PROSPECT NATIONAL BANK
50 N. MAIN STREET
MOUNT PROSPECT, IL 60056

# ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS IS DATED DECEMBER 7, 1999, between Severko Hrywnak, whose address is 4958 W. Irving Park Road, Chicago, IL 60641 (referred to below as "Grantor"); and MOUNT PROSPECT NATIONAL BANK, whose address is 50 NORTH MAIN STREET, MOUNT PROSPECT, IL 60056 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Cook County, State of Illinois:

LOT 64 IN DICKINSON PARK SUBDIVISION, NO. 2, BEING A SUBDIVISION OF THE SOUTH 175 FEET OF THE WEST 830 FEET OF THE EAST 3/4 OF LOT 12 IN SCHOOL TRUSTEES' SUBDIVISION, OF SECTION 16, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 4958 W. Irving Park Road, Chicago, IL 60641. The Real Property tax identification number is 13-16-428-023.

**DEFINITIONS.** The following words shall have the following meanings when used in this Assignment. Terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Assignment.** The word "Assignment" means this Assignment of Rents between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Rents.

**Event of Default.** The words "Event of Default" mean and include without limitation any of the Events of Default set forth below in the section titled "Events of Default."

**Grantor.** The word "Grantor" means Severko Hrywnak.

**12-07-1999**
**Loan No 9001**

Case: 1:15-cv-01262 Document 1-3 Filed 02/18/15 Page 2 of 6 PageID #:28

09157891

Page 2 of 6

**ASSIGNMENT OF RENTS**
**(Continued)**

Page 2

---

**Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Note and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Assignment, together with interest on such amounts as provided in this Assignment. In addition to the Note, the word "Indebtedness" includes all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor, or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, absolute or contingent, liquidated or unliquidated and whether Grantor may be liable individually or jointly with others, whether obligated as guarantor or otherwise, and whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations, and whether such Indebtedness may be or hereafter may become otherwise unenforceable.

**Lender.** The word "Lender" means MOUNT PROSPECT NATIONAL BANK, its successors and assigns.

**Note.** The word "Note" means the promissory note or credit agreement dated December 7, 1999, **in the original principal amount of $355,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is 8.500%.

**Property.** The word "Property" means the real property, and all improvements thereon, described above in the "Assignment" section.

**Real Property.** The words "Real Property" mean the property, interests and rights described above in the "Property Definition" section.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all rents, revenues, income, issues, profits and proceeds from the Property, whether due now or later, including without limitation all Rents from all leases described on any exhibit attached to this Assignment.

**THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Document, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE RENTS.** With respect to the Rents, Grantor represents and warrants to Lender that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power, and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Agreement.

**LENDER'S RIGHT TO COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**ASSIGNMENT OF RENTS**
09157891 Page 3 Page 3
**(Continued)**

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Illinois and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law. If, however, payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (a) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (b) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (c) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Assignment and this Assignment shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Assignment or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Assignment.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Assignment, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Assignment also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Assignment:

**Default on Indebtedness.** Failure of Grantor to make any payment when due on the Indebtedness.

**Compliance Default.** Failure of Grantor to comply with any other term, obligation, covenant or condition contained in this Assignment, the Note or in any of the Related Documents.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Assignment or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Grantor under this Assignment, the Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and

**ASSIGNMENT OF RENTS**
**(Continued)**

effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Other Defaults.** Failure of Grantor to comply with any term, obligation, covenant, or condition contained in any other agreement between Grantor and Lender.

**Death or Insolvency.** The death of Grantor or the dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forfeiture proceeding, provided that Grantor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender reasonably deems itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Collect Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Assignment shall not constitute a waiver of or prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or take action to perform an obligation of Grantor under this Assignment after failure of Grantor to perform shall not affect Lender's right to declare a default and exercise its remedies under this Assignment.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the rate provided for in the Note. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be

**ASSIGNMENT OF RENTS**
(Continued)

charged or bound by the alteration or amendment.

**Applicable Law.** This Assignment has been delivered to Lender and accepted by Lender in the State of Illinois. This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Assignment by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Assignment in all other respects shall remain valid and enforceable.

**Successors and Assigns.** Subject to the limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time Is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Assignment.

**Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Assignment (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Assignment shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or any of Grantor's obligations as to any future transactions. Whenever consent by Lender is required in this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT OF RENTS, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

X _____

    **Severko Hrywnak**

**12-07-1999**
**Loan No 9001**

**ASSIGNMENT OF RENTS**
**(Continued)**

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _ILLINOIS_ )
) ss
COUNTY OF _COOK_ )

OFFICIAL SEAL
JEANETTE R PILAPIL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/29/01

On this day before me, the undersigned Notary Public, personally appeared **Severko Hrywnak**, to me known to be the individual described in and who executed the Assignment of Rents, and acknowledged that he or she signed the Assignment as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _7th_ day of _December_, 19 _98_.

By _Jeanette P. Pilapil_ Residing at _Mount Prospect_

Notary Public in and for the State of _ILLINOIS_

My commission expires _01/29/01_

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.27a (c) 1999 CFI ProServices, Inc. All rights reserved.
[IL-G14 E3.27 F3.27 P3.27 HRYWNAK.LN C1.OVL]



Doc#: 1113939069 Fee: $38.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 05/19/2011 10:34 AM Pg: 1 of 2

## ASSIGNMENT OF MORTGAGE

For Value Received, the Federal Deposit Insurance Corporation as Receiver for Midwest Bank and Trust Company, (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto FirstMerit Bank, N.A., a corporation organized and existing under the laws of the United States ("Assignee"), all of Assignor's rights, title and beneficial interests in, to and under that certain Mortgage dated 12/7/1999 and recorded on 12/13/1999, made and executed by **Severko Hrywnak** in favor of Midwest Bank and Trust Company fka Mt Prospect National Bank, which Mortgage is of record as Document No 09157890, of the Official Records of **Cook** County, State of Illinois, encumbering the real property described on Exhibit A annexed hereto and made a part hereof, together with the buildings and improvements erected thereon, together with all documents evidencing or securing the loan relating to the Mortgage and all rights accrued or to accrue under the Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 5/11/2011.

FirstMerit Bank, N. A., attorney in fact for the Federal Deposit Insurance Corporation, receiver for Midwest Bank and Trust Company

By: _____
Name: Marcia Liuzzo
Title: Vice President

County of Stark )
State of Ohio )

BEFORE me, a Notary Public in and for said county, personally appeared the above named, Marcia Liuzzo known to me to be the Vice President of FirstMerit Bank, NA and acknowledged that he, as such Officer did hereunto subscribe the name of said Corporation, and that the same is his free act and deed, and the free act and deed of the Corporation.

IN TESTIMONY WHEREOF, I hereunto set my hand and official seal, at Canton, Ohio, this 12th day of _____ May _____, 2011.

PREPARED BY: FirstMerit Bank, NA
and Mail to: III Cascade Plaza
Akron, Ohio 44308

# 8038724

Notary Public Jonathan L. Worthington
Commission Expires 12/15/2013

LOT 64 IN DICKINSON PARK SUBDIVISION, NO. 2, BEING A SUBDIVISION OF THE SOUTH 175 FEET OF THE WEST 830 FEET OF THE EAST 3/4 OF LOT 12 IN SCHOOL TRUSTEES' SUBDIVISION, OF SECTION 16, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**The Real Property or its address is commonly known as 4958 W. Irving Park Road, Chicago, IL 60641.** The Real Property tax identification number is 13-16-428-023.

10182

Department of the Treasury - Internal Revenue Service

**Form 668 (Y)(c)**
(Rev. February 2004)

## Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>877085812 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.



Doc#: 1218826128 Fee: $25.00
Eugene "Gene" Moore
Cook County Recorder of Deeds
Date: 07/06/2012 09:56 AM Pg: 1 of 1

Name of Taxpayer  SEVERKO & RENEE HRYWNAK

Residence          4106 N LAVERGNE AVE
                   CHICAGO, IL 60641-1713

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2006 | XXX-XX-1735 | 04/15/2007 | 05/15/2017 | |
| 1040 | 12/31/2006 | XXX-XX-1735 | 04/14/2008 | 05/14/2018 | |
| 1040 | 12/31/2006 | XXX-XX-1735 | 10/11/2011 | 11/10/2021 | 254279.88 |

| Place of Filing | Recorder of Deeds<br>Cook County<br>Chicago, IL 60602 | Total | $ 254279.88 |
|---|---|---|---|

This notice was prepared and signed at _____CHICAGO, IL_____ , on this,

the ___22nd___ day of ___June___ , ___2012___ .

| Signature<br><br>for A. E. GENTRY | Title<br>REVENUE OFFICER<br>(312) 292-3060 | 24-04-1508 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

3758

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>. 923149113 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Doc#: 1305326169 Fee: $25.00
Karen A. Yarbrough
Cook County Recorder of Deeds
Date: 02/22/2013 02:49 PM Pg: 1 of 1

**Name of Taxpayer** SEVERKO & RENEE HRYWNAK

**Residence**     4106 N LAVERGNE AVE
CHICAGO, IL 60641-1713

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2007 | XXX-XX-1735 | 03/15/2010 | 04/14/2020 | |
| 1040 | 12/31/2007 | XXX-XX-1735 | 10/31/2012 | 11/30/2022 | 407355.61 |
| 1040 | 12/31/2008 | XXX-XX-1735 | 03/08/2010 | 04/07/2020 | |
| 1040 | 12/31/2008 | XXX-XX-1735 | 10/31/2012 | 11/30/2022 | 209856.10 |
| 1040 | 12/31/2010 | XXX-XX-1735 | 10/17/2011 | 11/16/2021 | |
| 1040 | 12/31/2010 | XXX-XX-1735 | 01/14/2013 | 02/13/2023 | 13439.74 |

| Place of Filing | Recorder of Deeds<br>Cook County<br>Chicago, IL 60602 | Total $ | 630651.45 |
|---|---|---|---|

This notice was prepared and signed at _____ CHICAGO, IL _____ , on this,

the ____15th____ day of ____February____, ____2013____.

| Signature<br>for A. E. GENTRY | Title<br>REVENUE OFFICER<br>(312) 292-3060 | 24-04-1508 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

| Form 668 (Y)(c) | 14583 | Department of the Treasury - Internal Revenue Service |
|---|---|---|
| (Rev. February 2004) | | **Notice of Federal Tax Lien** |

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>997161014 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

1412742130

Doc#: 1412742130 Fee: $25.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 05/07/2014 03:05 PM Pg: 1 of 1

Name of Taxpayer SEVERKO & RENEE HRYWNAK

Residence     4106 N LAVERGNE AVE
              CHICAGO, IL 60641-1713

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2009 | XXX-XX-1735 | 03/31/2014 | 04/30/2024 | 98525.47 |

| Place of Filing | Recorder of Deeds<br>Cook County<br>Chicago, IL 60602 | Total | $ | 98525.47 |
|---|---|---|---|---|

This notice was prepared and signed at _____CHICAGO, IL_____ , on this,

the ___28th___ day of ___April___ , ___2014___ .

| Signature | Title<br>REVENUE OFFICER | 24-04-1508 |
|---|---|---|
| for A. E. GENTRY | (312) 292-3060 | |

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X



Doc#: 1113939070 Fee: $38.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 05/19/2011 10:34 AM Pg: 1 of 2

## ASSIGNMENT OF ASSIGNMENT OF RENTS

For Value Received, the Federal Deposit Insurance Corporation as Receiver for Midwest Bank and Trust Company, (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto FirstMerit Bank, N.A., a corporation organized and existing under the laws of the United States ("Assignee"), all of Assignor's rights, title and beneficial interests in, to and under that certain Mortgage dated 12/7/1999 and recorded on 12/13/1999, made and executed by **Severko Hrywnak** in favor of Midwest Bank and Trust Company fka Mt Prospect National Bank, which Mortgage is of record as Document No 09157891, of the Official Records of **Cook** County, State of Illinois, encumbering the real property described on Exhibit A annexed hereto and made a part hereof, together with the buildings and improvements erected thereon, together with all documents evidencing or securing the loan relating to the Mortgage and all rights accrued or to accrue under the Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Assignment of Rents.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Assignment of Rents on 5/11/2011.

FirstMerit Bank, N. A., attorney in fact for the Federal Deposit Insurance Corporation, receiver for Midwest Bank and Trust Company

By: _____
Name: Marcia Liuzzo
Title: Vice President
County of Stark )
State of Ohio )
BEFORE me, a Notary Public in and for said county, personally appeared the above named, Marcia Liuzzo known to me to be the Vice President of FirstMerit Bank, NA and acknowledged that he, as such Officer did hereunto subscribe the name of said Corporation, and that the same is his free act and deed, and the free act and deed of the Corporation.

IN TESTIMONY WHEREOF, I hereunto set my hand and official seal, at Canton, Ohio, this 12th day of _____ MAY , 2011.

Notary Public Jonathan L. Worthington
Commission Expires 12/15/2013

PREPARED BY: FirstMerit Bank, NA
and Mail to      III Cascade Plaza
                 Akron, Ohio 44308

# 8038724

LOT 64 IN DICKINSON PARK SUBDIVISION, NO. 2, BEING A SUBDIVISION OF THE SOUTH 175 FEET OF THE WEST 830 FEET OF THE EAST 3/4 OF LOT 12 IN SCHOOL TRUSTEES' SUBDIVISION, OF SECTION 16, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**The Real Property or its address is commonly known as 4958 W. Irving Park Road, Chicago, IL 60641.** The Real Property tax identification number is 13-16-428-023.